UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-1286 (DSD/SRN)

Darla Hansen,

    Plaintiff,

v.       **ORDER**

City of St. Paul, a Minnesota
municipal entity; Officer
David Pavlak (#526940), personally,
individually and in his capacity
as a Police Officer; Officers Jane
Doe and Richard Roe, unknown and
unnamed St. Paul Police Officers,
personally, individually, and in
their capacities as Police Officers,

    Defendants.

    Albert G. Goins, Sr., Esq. and Goins & Wood, P.C. 301 4th Avenue, Suite 378, Grain Exchange Building, Minneapolis, MN 55415, counsel for plaintiff.

    Portia M. Hampton-Flowers, Assistant St. Paul Attorney, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102, counsel for defendants.

This matter is before the court upon defendants' motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants defendants' motion.

## BACKGROUND

This action arises out of an injury to a civilian third party sustained during a police chase. On April 4, 2000, City of St. Paul police officer Thomas Perchizelli asked defendant officer David Pavlak ("Pavlak") to assist in apprehending a vehicle suspected of carrying illegal narcotics. Pavlak, who was patrolling the vicinity in his police car, turned on his lights and siren and began to pursue the suspect vehicle. The suspect accelerated and fled from Pavlak, running stop lights and driving through the yards of residential properties. Based on experience with narcotics dealers and the suspect's erratic and dangerous driving, Pavlak believed the suspect was probably armed and likely to endanger the public, either through his driving or through an encounter with a citizen. (Pavlak Dep., Ex. 3 at 2.)

Pavlak pursued the vehicle for several blocks. Eventually, the vehicle crashed into a tree in the residential yard of 3250 Belmar Drive, Vadnais Heights, Minnesota. The suspect exited the car and began to flee on foot. Pavlak stopped his own car and shouted a verbal warning to the suspect. He then opened the rear door of his car and released "Buster," his police canine. Pavlak and Buster ran after the suspect together. Plaintiff Darla Jean Hansen ("Hansen"), resident of 3252 Belmar Drive, was standing on the upper level of the two-level deck in her backyard smoking a cigarette when she saw the suspect, pursued by Pavlak and Buster,

running through her neighbor's yard. Aware that there were children playing in the neighbor's yard, Hansen shouted "Not the children" as the suspect ran toward her.

Upon arriving in Hansen's yard, the suspect tried to climb onto the lower level of the deck. As the suspect was straddling the deck's lower railing, Buster attempted to apprehend him by biting his leg. Simultaneously, Hansen ran to the lower level of her deck and grabbed the suspect's torso, trying to shove him off the deck. Pavlak shouted a warning to Hansen.[1] Upon hearing Pavlak's warning, Hansen let go of the suspect. The suspect freed his leg from Buster's grasp and ran to the upper level of the deck. As Buster and Pavlak were making their way to the deck stairs, Hansen, seeing the suspect nearing her patio doors, ran to him and grabbed his jacket, shouting "Not in my house." The suspect shrugged out of his jacket, and Hansen grabbed him in a bear hug, asking, "What are you going to do now?" While Hansen held on to the suspect, Buster bit her before Pavlak was able to recall him. The suspect fled.

Pavlak immediately ordered Buster to release his bite on Hansen. Pavlak told Hansen he would return and sent Buster to find the suspect. Pavlak and Buster apprehended the suspect in a nearby

---

[1] The parties disagree as to the wording of the warning: plaintiff claims that Pavlak shouted that he was going to shoot, while defendant claims that he simply told her to get back. Taking all facts in the light most favorable to the nonmoving party, the court assumes that Pavlak warned that he would shoot.

yard.  Other St. Paul police officers arrived on the scene to assist in arresting the suspect.  St. Paul police officers and paramedics examined Hansen's injuries and questioned her about the incident.  Hansen explained that she had grabbed the suspect because she was afraid he was going to enter her house and admitted that she heard Pavlak's warnings to let go of the suspect to avoid being bitten by Buster.

Hansen filed this action against Pavlak and the City of St. Paul[2] on April 3, 2006, alleging excessive and unreasonable use of force, summary punishment, deprivation of liberty and equal protection and due process rights violations under 42 U.S.C. § 1983 as well as negligence and liability under Minnesota Statutes § 347.22 - the state's strict liability dog bite statute. Defendants Pavlak and the City of St. Paul now move the court for summary judgment on all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.

## DISCUSSION

### I.   Standard of Review

The moving party in a motion for summary judgment will prevail if it demonstrates to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to

---

[2] Hansen also brought similar claims against two unnamed police officers, Roe and Doe.  However, the court dismissed these claims at oral argument.

judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a nonmoving party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.II.

**II. 42 U.S.C. § 1983 Claims**

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Section 1983 is "'not itself a source of substantive rights,'" but merely affords "'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). The first task for a court considering a § 1983 claim is to identify the specific constitutional right allegedly infringed. See id. at 271.

### A. Defendant City of St. Paul

Hansen asserts § 1983 claims against the City of St. Paul. Municipalities, however, cannot be held liable for constitutional violations under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, they may be liable only if the execution of their policies or customs resulted in the deprivation of a constitutional right. See id. at 694; Yellow Horse v. Pennington County, 225 F.3d 923, 928 (8th Cir. 2000). Hansen has presented no evidence of a City of St. Paul policy or custom at the root of the alleged constitutional violations. Therefore, summary judgment is warranted as to plaintiff's § 1983 claims against the City of St. Paul

### B. Defendant David Pavlak

Hansen also asserts § 1983 claims against Pavlak. In her complaint, Hansen alleged excessive use of force, summary punishment and deprivation of liberty and equal protection.

Hansen, however, only opposes summary judgment on the excessive force claim.  The court therefore grants defendants' motion for summary judgment on the unchallenged claims.

Pavlak moves the court to dismiss Hansen's remaining claim of excessive use of force on a qualified immunity theory.  Government officials performing discretionary functions are shielded from liability for civil damages under 42 U.S.C. § 1983 to the extent their conduct does not violate "clearly established statutory or constitutional rights" of which a "reasonable person" would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether qualified immunity applies, the court considers the "objective legal reasonableness" of an official's conduct in light of the information he or she possessed at the time of the alleged violation.  See Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).  An official will be immune if it is objectively obvious that a reasonably competent official could have concluded that the disputed action was proper.  See Malley v. Briggs, 457 U.S. 335, 341 (1986).

The applicability of qualified immunity is a question of law analyzed in two parts.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The court first determines whether the facts alleged are adequate to show a constitutional violation, and second, if so, whether the law regarding the right allegedly violated was clearly established.

See id.; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666-67 (8th Cir. 1992). When a plaintiff fails to establish a violation of a constitutional right, no additional inquiry is necessary, and the official is entitled to qualified immunity. Saucier, 533 U.S. at 201.

The court first determines whether Hansen has alleged a violation of an established constitutional right. Hansen alleges that Pavlak used excessive force against her in violation of the Fourth Amendment when he unreasonably failed to prevent Buster from "seizing" her. The Fourth Amendment prohibits unreasonable seizures but "is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous." Medeiros v. O'Connell, 150 F.3d 164, 167 (2d Cir. 1998). A Fourth Amendment seizure requires an "intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989). Seizure can occur if an unintended person is the object of a detention or taking, but the detention or taking of that person must be willful. Id. This principle of intent is "implicit in the word 'seizure,' which can hardly be applied to an unknowing act." Id. However, a seizure will not occur merely because the act of restraint itself was intended. See Rucker v. Hartford County, 946 F.2d 278, 281 (4th Cir. 1991); see Moore v. Indehar, No. 05-451, 2006 WL 2708634, at *3-4 (D. Minn. Sept. 20, 2006). The dispositive inquiry is not whether Pavlak intended to release Buster, the means of seizure,

but whether he intended to seize Hansen, the eventual object of the seizure. See Medeiros, 150 F.3d at 167-68; Rucker, 946 F.2d at 281. The Fourth Amendment was meant to address "misuse of power, ... not the accidental effects of otherwise lawful government conduct." Brower, 489 U.S. at 596.

Although Pavlak willfully released Buster, he did not intend to seize Hansen. Instead, Hansen's encounter with Buster was an unintended consequence of an otherwise lawful government action, and such a consequence does not form the basis of a Fourth Amendment claim. Accordingly, Hansen has not established a violation of her constitutional rights, Pavlak is entitled to qualified immunity, and summary judgment on Hansen's excessive force claim is warranted.

### III. Minnesota Strict Liability Dog Bite Claim

In addition to her constitutional claims, Hansen alleges that defendants are liable under a Minnesota state statute imposing strict liability upon the owner of a dog that "without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be." Minn. Stat. § 347.22. Defendants argue that the statute does not apply to a situation in which Pavlak was exercising reasonable force.

In Hyatt v. Anoka Police Department, the Minnesota Supreme Court extended the application of Minnesota's strict liability dog bite statute to municipal owners of police dogs, subject to

Minnesota Statutes § 609.06. 691 N.W.2d 824 (Minn. 2005). Section 609.06 subdivision 1(a) authorizes the reasonable use of force by a public officer in "effecting a lawful arrest." The Hyatt Court explicitly addressed the intersection of § 609.06 and § 347.22, holding that "to the extent the dog bite statute conflicts with the reasonable force statute, the special and subsequently enacted provisions of the reasonable force statute prevail." Id. at 830. Therefore, where a citizen - even an innocent bystander - is bitten by a police dog in the course of a police officer's use of reasonable force, strict liability under § 347.22 will not attach. See id.; Szabla v. City of Brooklyn Park, 429 F.3d 1168, 1176 (8th Cir. 2005).

Under Minnesota law, a police officer's use of force is reasonable where "an objectively reasonable police officer would have believed that the force used was lawful in light of clearly established law and the information the officer possessed at the time of the challenged activity." Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 (Minn. 1999). In this reasonableness inquiry, the court considers the seriousness of the crime in question, whether the suspect presented an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest. See Johnson v. Morris, 453 N.W.2d 31, 36 (Minn. 1990). An officer's authorization to use reasonable force is "not limited only to situations where the force is 'used' upon the arrestee."

10

See Hyatt, 691 N.W.2d at 828-29; Minn. Stat. § 609.06.  Rather, the authorization "extends to the unintended harm that the force causes to an innocent bystander."  Hyatt, 691 N.W.2d at 829; see Dyson v. Schmidt, 109 N.W.2d 262, 268-69 (Minn. 1961).

Here, the suspect's erratic and dangerous driving, coupled with Pavlak's belief that the suspect was likely armed, constituted probable cause that the suspect posed a risk of serious physical harm towards Pavlak, Hansen, and other citizens.  Further, by engaging in a high speed vehicular chase and continuing to evade police on foot, the suspect was actively resisting arrest.  Under these circumstances, Pavlak's use of Buster was reasonable and within the scope of conduct authorized by § 609.06.[3]  See Dennen v. City of Duluth, 350 F.3d 786, 793 (8th Cir. 2003) (use of unleashed police canine to apprehend dangerous suspect not unreasonable).  Because Pavlak used reasonable force, § 609.06 overrides § 347.22, even for an unintended victim like Hansen.  See Hyatt, 691 N.W.2d at 829-30.  Therefore, the court grants defendant's motion for summary judgment on Hansen's strict liability dog bite claim.

---

[3] The parties disagree as to the admissibility of an expert report prepared by Lieutenant Steve Pearson.  Pearson's expert report discussed police practices and the use of force.  Hansen contends that the report must be stricken because it is unsworn hearsay; Pavlak argues that the report can be properly considered at the summary judgment stage even if it may not be admissible at trial.  The court declines to address this issue because it did not rely on the expert report in concluding that Pavlak's use of force was objectively reasonable.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendants City of St. Paul and Officer David Pavlak's motion for summary judgment [Doc. No. 12] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 27, 2007

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court